# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4024 | **DATE** | 6/25/2001 |
| **CASE TITLE** | BRENT KAMLER vs. H/N TELECOMMUNICATION SERV., INC., ET AL., | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   The motions for summary judgment against plaintiff Brent Kamler [45-1] [42-1] [47-1] are granted.  Judgment is entered for defendants Pal Telecom Group, Inc., Pal Telecom Group, Inc. Employee Welfare Plan, Royal & Sunalliance, and Star Marketing & Administration, Inc. and against plaintiff Brent Kamler.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | JUN 2 9 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | *eaw* | 85 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/26/2001 | |
| | | | date mailed notice | |
| | sb | courtroom deputy's initials | pg | |
| | | | mailing deputy initials | |

ED-7
FILED FOR DOCKETING
01 JUN 28 PM 8: 00

Date/time received in central Clerk's Office



BRENT KAMLER )
)
Plaintiff, )     No. 00 C 4024
)
v. )     Suzanne B. Conlon, Judge
)
H/N TELECOMMUNICATION SERV., INC., )
ET AL., )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Brent Kamler sues H/N Telecommunication Services, Inc., formerly known as Pal Telecom Group, Inc. ("Pal"), Pal Telecom Group, Inc. Employee Welfare Plan ("the Pal Plan"), Royal & Sunalliance ("Royal"), and Star Marketing & Administration, Inc. ("Starmark") (collectively "defendants") on a five-count complaint for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and for common law claims. Count I is against the Pal Plan for failure to pay benefits under ERISA. Counts II and III are against Pal, Royal and Starmark for failure to respond to a request for information and failure to furnish information under ERISA respectively. Counts IV and V are against Pal for promissory estoppel and breach of fiduciary duty. Defendants move for summary judgment.

## BACKGROUND

### I.      The parties and their relationship

All facts are undisputed unless otherwise noted. Nestor Popowych, president of Pal,

-1-

asked George Lamplota, director of project management, to hire three managers for construction

of cellular telephone infrastructure in Brazil. Lamplota telephoned Kamler, whose resume was

on file, for his initial interview. Kamler testified that he asked Lamplota for $95,000 a year

salary, full medical benefits, and per diem expenses. Pl. Ex. 1 at 68-71. Kamler resides in

California and asserts he demanded health insurance or he would not go to Brazil. *Id.* at 71, 87-

89, 141. Lamplota allegedly responded that Kamler would be insured. *Id.* Lamplota denies he

told Kamler this. Pal Ex. 7 at ¶¶ 18-20. Kamler's recollection of their agreement was that he

would receive full medical benefits before he left for Brazil.

Lamplota offered Kamler Pal's group health, life and disability insurance, but states

Kamler objected to paying the premium. Pal Ex. 7 at ¶¶ 7-8. Kamler denies he told Lamplota

that he did not want Pal's health insurance if he had to pay for it. Pl. Ex. 1 at 72. Lamplota

states he told Kamler Pal would not make an exception to the policy that new employees paid

their own premium for the first 90 days, but Pal would consider paying it afterwards. Pal Ex. 7 at

¶¶ 9-10. Kamler denies Lamplota told him this. Pl. Resp. Pal Facts at ¶ 35. Pal asserts Kamler

continued to refuse to pay the premium and stated he had COBRA coverage through his prior

employer and they would revisit the issue later. Pal Ex.7 at ¶¶ 8-11. Kamler denies this. Pl. Ex.1

at 72. On March 17, 1998, Kamler signed a letter of commitment memorializing the agreement

on his compensation package, but Kamler concedes the agreement is silent about insurance

coverage. Kamler denies the letter of commitment was his entire agreement with Pal.

Two days later, Kamler left for Brazil. Lamplota obtained insurance enrollment forms

and learned the estimated coverage date for Kamler was May 1, 1998. Pl. Ex. 8 at 80-81. The

waiting period could be waived, but the request for waiver had to accompany the insurance

enrollment form. Pl. Ex. 15, § 106 at 5. On March 30, 1998, Lamplota faxed the enrollment

form and personnel manual to Victor Jaworski in the Brazil office with the following cover

memorandum:

> Victor: Enclosed please find [Pal's] Personnel Manual and the Employee
> Enrollment Form (Insurance) to be forwarded to Brent Kamler . . . [He] should fill
> out the Employee Enrollment Form and return it back to me as soon as possible,
> the coverage is to start by 05-01-1998. . . .

Pal Ex. 7 at ¶ 16; Pal Ex. 11 at PAL 53-76. Jaworski does not recall receiving the fax before

May 1998. Pl. Ex. 9 at 40-41. On May 5, 1998, Lamplota resent the March 30, 1998

memorandum with the attachments to Jaworski. Pal Ex. 7 at ¶ 22. On May 6, 1998, Jim Olivia

faxed this information to Kamler's hotel in Brazil, with a cover note that read: "Hi Brent: I was

asked by Victor [Jaworski] to follow up on George Lamplota's fax. Please fill out the requested

forms and fax back to Sao Paulo office." Olivia then followed up with a phone call to Kamler.

After Kamler received the enrollment form, he promptly called Lamplota with questions about it.

Pl. Ex. 1 at 82-84, 93-94,97-98. This was the first time Kamler discussed health insurance with

Lamplota since his initial telephone interview in mid-March 1998. *Id.* Kamler told Lamplota he

was concerned the form required him to release information about his family, including credit

reports and medical information that he felt violated his right of privacy. Pl. Ex. 1 at 85-87,159-

160. Kamler asked Lamplota to verify the information that the insurance company wanted and

why. *Id.* Lamplota told Kamler that he would contact the insurance company and call Kamler

back. *Id.* According to Kamler, Lamplota failed to respond to Kamler's questions, and did not

tell him that he would not receive coverage without filling out and submitting the form. *Id.*

Lamplota does not agree with Kamler's recollection of these events. Pal. Ex. 7 at ¶¶ 18-20.

Kamler asserts Starmark in fact did not conduct investigations of personal information about an employee or his family. Pl. Ex. 4 at 82-84. Kamler's record cite does not fully support this assertion because Starmark only states it was not aware of any instance that an investigation was actually conducted. *Id.* Kamler also contends that Lamplota did not advise him to contact Starmark or anyone else for answers to his questions. Pl. Ex. 1 at 84-87,154-55. The record does not support his contention because Kamler was not asked this specific question and offers no other support for the contention. *Id.*

The personnel manual's section on insurance states "medical life and long-term disability insurance are carried by the firm on a group basis for the benefit of its employees." Pal Ex. 4(a) at 141. This section is one of the reasons Kamler believed he was insured. Kamler never received disability or life insurance through a previous employer without filling out a form. Pal Ex. 4(a) at 135.[1] Kamler contends that he filled out a form for life insurance with some of his employers. Pl. Resp. Pal Facts at ¶ 26; Pal Ex. 4(a) at 132-35. But his testimony does not support this contention. Despite this, Kamler maintains he believed that as soon as he told Lamplota that he would not leave the country without insurance, he was insured. Pl. Ex. 4(a) at 89. Kamler also asserts Lamplota stated he would be insured. *Id.* at 71,87-90,110,141. Kamler never paid an insurance premium, and Pal never paid one on his behalf. Kamler asserts he was not required to pay a premium because the Pal Plan required Pal to pay 100% of the premium for each employee. Pl. Ex. 12, part IV(A) at 3. Kamler adds that he was not aware whether Pal was making payroll deductions for premiums because his checks were sent directly to the United

---

[1] Because Pal and the Pal Plan's exhibits in support of their motion for summary judgment contain two exhibits marked number 4, the court refers to the second exhibit as "Pal Ex. 4(a) at __ ."

States. Pl. Ex. 1 at 99,135-136. Kamler never received an insurance card or certificate of insurance. Although Kamler believed he was insured, he did not know the insurer, the terms of coverage, the deductibles, exclusions, or the period of time the policy covered. Kamler was laid off due to lack of work on June 3, 1998.

Two weeks later, Kamler had a heart attack. His hospital bill is blank where the form indicates insurance coverage. On August 4, 1998, Kamler submitted a claim to Pal for payment of the medical expenses and then to Royal. Kamler disagrees and asserts that Pal submitted his claim to Royal. Pl. Ex. 2 at 105-07; Pl. Ex. 3 at 12-13,16. The record does not support this assertion. On March 6, 2000, Lamplota received a letter from Kamler's attorney requesting insurance documents. The letter was referred by Lamplota to Popowych and eventually to legal counsel. Pl. Ex. 8 at 191-92. Popowych left this matter to Lamplota and Royal to handle. Pl. Ex. 2 at 114,119. On November 24, 1998, Royal denied Kamler's claim based upon the results of its investigation. Kamler never contacted Starmark, and no one requested information regarding the Pal Plan or submitted a claim for benefits to Starmark.

## II.    The Pal Plan

On November 8, 1988, Popowych Associates established an employee welfare benefit plan for eligible employees through participation in a group medical, life and disability insurance program underwritten by Trustmark Insurance Company ("Trustmark") (f/k/a Benefit Trust Life Insurance Company) with administration performed by Starmark. Popowych formed PAL in the early 1990s and covered the employees under the same plan ("the Pal Plan"). In 1995, Popowych received separate group numbers for Pal and Popowych Associates, but the terms, conditions, and coverage remained the same. In joining the Pal Plan, Pal determined, *inter alia*, the types of

-5-

coverage to be provided, the eligibility requirements for its employees, employee premium contribution amounts, deductible and co-pay requirements and desired plan benefits. Pal served as the "plan sponsor" as defined in ERISA, 29 U.S.C. § 1001(16)(B); Pl. Ex. 13,16-17; Starmark Ex. 1A. However, Pal denies it is the plan sponsor, implying Popowych Associates is the sponsor. Pal Br. at 7. The participating employer agreement states that the employer understands it is establishing this plan and neither Starmark nor Trustmark is the sponsor; any duties of the sponsor will be fulfilled by the employer. Starmark Ex. 1A. No plan administrator was designated in the Pal Plan. Pal reserved the right to modify or eliminate the coverage carried for its employees' benefit. Starmark Ex. 3 at 10.

To be covered by the Pal Plan all eligible employees had to complete and sign an enrollment form, and have their premiums paid. Newly added members received the effective date for which they were eligible regardless of processing time and billing periods. Pl. Ex. 16. The Pal Plan includes the Trustmark insurance policy, the participating employer agreement, the certificate of insurance, the employer guide, and the personnel manual. The Pal Plan provides that Trustmark retains the right to amend and interpret the contract. Pal Ex. 4, part III(A), at 37, part IX(B),(C) at 45. Kamler adds that the participating employer agreement provides the employer requests Starmark perform other administrative services as it and Starmark may agree upon in connection with the Pal Plan, provided no services shall involve the exercise of discretion by Starmark. Pal Ex. 5, part IV(B),(C) at 4.

Further, Trustmark retained the right to accept or reject an applicant for enrollment into the Pal Plan: "[N]o insurance will become effective without approval of Trustmark. . . or its administrative representative [Starmark]." Pal Ex. 5, part IV(A) at 3. But since 1997, medical

-6-

coverage was guaranteed; Starmark could not decline an employee medical coverage under the

federal Health Insurance Portability Act ("HIPA"). Pl. Ex. 4 at 57-58, 82-84. The participating

employer agreement provides that eligible employees are those that work 30 or more hours per

week. Pal Ex. 5, part II. The Pal Plan provides that all eligible employees must apply for

coverage by filling out the enrollment form. Pal Ex. 4, part III(D)(1) at 39. If the employee

applies before working 30 continuous days, his effective date is at the end of the 30-day period,

and if he applies after this date, the effective date is the first day of the month following the date

he applies. *Id.* The 30-day period could be waived by a request submitted with the enrollment

form. Pl. Ex. 15, § 106 at 5. The enrollment form provides:

> To be completed by the employees only. Failure to provide complete facts may be
> cause for cancellation of your coverage as of its effective date.
> NOTE: As part of our routine underwriting procedure, you may receive a phone
> call . . . to obtain personal information needed to evaluate your insurability . . .
> Unless waived above, I request insurance under my employer's insurance plan . . .
> I authorize my employer to make deductions from my earnings for my share of the
> cost, if any, for the benefits for which I may become entitled . . .

Pal Ex. 11 at PAL 54-55; Pal Ex. 12.

The Pal Plan states that Trustmark will provide the certificates of insurance for covered

employees. Pal Ex. 4, part III(A) at 39, part IV at 42. The certificates describe benefits for an

employee whose coverage has become effective and specify when and where the Pal Plan may be

inspected. *Id.* They also summarize the main parts of the Pal Plan that affect him. *Id.* Pal was

responsible for sending the certificates of insurance on to employees. Pl. Ex. 6 at 37-38. Pal does

not determine or process claims. The certificate of insurance states:

> YOUR COVERAGE IS INSURED BY [TRUSTMARK] . . . AND
> ADMINISTERED BY ITS AUTHORIZED REPRESENTATIVE, . . .
> STARMARK. ALL CLAIMS SHOULD BE SUBMITTED TO STARMARK

AND ALL QUESTIONS REGARDING YOUR COVERAGE SHOULD BE
DIRECTED TO STARMARK

Pal Ex. 5, certificate at 1,26. After an employee filled out an enrollment form and was accepted by

Trustmark, he received a certificate of insurance. Pal Ex. 4, part IV at 37-39,42;Pal Ex. 5, part II

& IV;Pal Ex. 11 at PAL 54-55;Pal Ex. 7at ¶ 2;Pal Ex. 8at ¶ 4;Pal Ex. 9 at ¶ 2. Pal employees

Sriver, Lamplota, and Olivia filled out the forms and also received insurance cards. Pl. Resp. Pal

Facts at ¶ 18.

Royal provided errors and omissions coverage to Pal with effective dates September 8,

1997 through September 8, 1998 that states:

> Coverage. We will pay those sums that the "insured" becomes legally obligated to
> pay as damages because of claims made against you by a[] former employee . . . and
> caused by any negligent act, error or omission of yours, or any other person for
> whose act the "insured" is legally liable in the "administration" of your "Employee
> Benefit Programs."

Employee benefit programs include group life insurance, group health insurance and

disability benefits. Administration is defined as giving counsel to employees with respect to

benefit programs; interpreting the employee benefit programs; handling of records in connection

with the employee benefit programs; or effecting enrollment or cancellation of employees under

the benefit programs provided, all activities are authorized by Pal. Starmark Ex. 8,9 at R25-27.

Royal also provided commercial general liability insurance to Pal. Neither the commercial policy

nor the errors and omissions coverage provided health coverage to Pal's employees.

In October 1999, CH2M Hill Telecommunications Group, LLP ("Hill") and Pal merged in

a transitional merger, and in October 2000, Hill purchased Pal's assets. Pl. Ex. 2 at 9;Pl. Resp.Pal

Facts at ¶ 20. On December 31, 1999, the Pal Plan terminated. The Hill group plan uses a different

insurance carrier than the Pal Plan. On March 6, 2000, Kamler wrote to Pal and Royal to request Pal Plan documents. On March 20, 2001, he filed his second amended complaint against Pal, the Pal Plan, Royal, and Starmark.

## DISCUSSION

### I.    Summary judgment standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir.1999). The court considers the whole record and draws all reasonable inferences in favor of the nonmoving party. Bay v. Cassens Transp. Co., 212 F.3d 969, 972 (7th Cir.2000). An issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### II.    Standing under ERISA

For Kamler to have standing to bring a claim under ERISA, he must be a "participant" at the time he filed his action. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 116 (1989). The term participant is defined as a "former employee ... who is or may become eligible to receive a benefit... from an employee benefit plan." 29 U.S.C. § 1002(7). This definition includes former employees who have a reasonable expectation of returning to covered employment or who have a "colorable claim to vested benefits." Firestone, 489 U.S. at 117-18. Because Kamler is neither currently employed by Pal nor expected to be so employed in the future, his claim must rest on "a

colorable claim to vested benefits." The requirement of a colorable claim is not a stringent one. Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790 (7th Cir. 1996). Jurisdiction requires an arguable claim. *Id.*; Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 700 (7th Cir.1991).

Pal, the Pal Plan, and Starmark argue that where a former employee, like Kamler, never enrolled in or contributed to his former employer's benefit plan, he is not entitled to benefits under the plan and does not have a "colorable claim to vested benefits." Sallee v. Rexnord Corp., 985 F.2d 927 (7th Cir.1993); Loechl v. Illinois Bell Tel. Co., 648 F. Supp. 1178, 1180-81 (N.D.Ill.1986); Rudman v. Time Ins. Co., 1995 WL 239390, at *9 (N.D.Ill. Apr. 21,1995); Freeman v. Jacques Orthopaedic & Joint Implant Surgery Med. Group, 721 F.2d 654, 655 (9th Cir.1983). Rudman is inapposite because it concerns ERISA's preemption of common law claims and not the term participant. In Sallee, the plaintiffs voluntarily left employment knowing their benefits would not vest unless they were provided a termination date. Thus, the court found they were not participants and lacked standing under ERISA. *Id.* at 929. Kamler argues that unlike the plaintiffs in Sallee, he was eligible for the Pal Plan benefits and the issue of enrollment is irrelevant to the question of eligibility. But Loechl and Freeman collectively hold that former employees not covered by a benefit plan at the time of their departure from the company *regardless of misrepresentations on the part of the employer's agents* are not participants under ERISA. Indeed, the reasons for failing to enroll in and have contributions made on one's behalf to a plan are considered irrelevant to whether an employee is a participant. Boren v. Southwestern Bell Tel. Co., Inc., 933 F.2d 891,893 (10th Cir.1991);Smith v. Motherlode Plastics, Inc., 990 F.2d 1260,1993 WL 83830,at *1-2 (9th Cir. 1993)(table);Pierchalaski v. Dr. Samuel P. Cimino, D.D.S. Assoc., Inc., No. 92-6373, 1993 WL 281064, at *1-2 (E.D. Penn.July 26,1993);*see* James v. National Bus. Sys., Inc.,

924 F.2d 718 (7th Cir.1991). This is especially so because the Pal Plan is clear that no coverage exists for an employee absent an approved enrollment application and payment of premium by or on his behalf. Burrey v. Pacific Gas & Elec. Co., 159 F.3d 388,395-96 (9th Cir. 1998); Pal Ex. 4, part III § D(1) at 37-39, Pal Ex. 5, part II & IV, Pal Ex. 11 at PAL 54-55. Because Kamler never enrolled, no premium was paid and he has no standing under ERISA as a participant.

Kamler does not address Loechl or Freeman, but argues his claim is not frivolous. He contends that he was eligible for benefits under the Pal Plan because he worked 30 or more hours per week. Had his application been submitted before or after the waiting period, he would have been eligible for coverage on May 1, 1998. This period could be waived by a request accompanying the enrollment form. Regardless, Kamler did not fill out and submit the form. But Kamler contends Pal is estopped from denying coverage and breached its fiduciary duty because it provided him with misleading and incomplete information. Bowerman v. Wal-Mart, 226 F.3d 574 (7th Cir. 2000). Bowerman involved a plaintiff who participated in the employer's plan and then left to work elsewhere. The plaintiff received COBRA information, filled out and submitted the application. A month later, the plaintiff returned to her employer without receiving a notice regarding COBRA payments. The employer's plan provided that upon her return she would receive the same medical coverage she had before she left, and her employer said she was not required to pay for COBRA because she was gone a short a period of time. After experiencing problems related to her pregnancy, the plaintiff submitted a claim. The plan denied the claim because the pregnancy became a pre-existing condition after her COBRA coverage lapsed due to nonpayment. Bowerman did not address the term participant.

But Kamler also argues that the failure to submit an application for enrollment does not

-11-

defeat his claim for benefits because there is a material issue of fact regarding whether a completed form should be excused by Pal's misconduct. Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335, 340-41. Epright involved an employer that arbitrarily designated an employee as temporary, making him ineligible for health coverage. The court found the classification contradicted the plan's definition of a full time employee entitled to coverage. Further, the court decided the enrollment form was excused because the plaintiff made many inquiries about when his status would change and he would be eligible for coverage. The court noted it would be a different situation if the plaintiff knew he was eligible and did not complete the form through procrastination or indecision. Id. Kamler knew he was eligible, yet after receiving the form, stating that he must fill it out for coverage, along with two memoranda requesting Kamler to fill out the forms and submit them, he did not. See Sallee, 928-30 (plaintiffs own action deprived them of participant status); Adamson v. Armco, Inc., 44 F.3d 650, 655 (8th Cir.1995).

According to Kamler, the enrollment form should be excused because he told Lamplota he would not leave the country without health insurance, and Lamplota told him he would be insured. The memorandum stating coverage was to begin May 1 and the accompanying documents with it contradict any continued belief by Kamler that coverage was automatic. Kamler states he was not informed he had to fill out the form to be covered. But the memoranda sent with the form directed Kamler to fill out and return the form, and the form itself showed he had to fill it out to elect or waive coverage. Kamler claims the memorandum that stated coverage was to start May 1 misled him. However, the memorandum directed Kamler to fill out the form and return it as soon as possible. Kamler promptly called Lamplota with questions about the form and Lamplota promised to check with the insurer and to get back to him with answers, but failed to do so. None of these

questions concerned whether Kamler had to fill out the form. Lamplota also did not tell Kamler to contact Starmark directly, but the form indicates the administrator of the Pal Plan is Starmark. Lamplota asserts he told Kamler that Pal never paid the first 90 days of health coverage, and that Kamler refused to pay and did not fill out the application. Kamler denies this and so cannot rely on it. Finally, because Starmark could not decline medical coverage due to HIPA, Kamler asserts the form is ministerial. Even if Starmark could not decline coverage, it still required a form to show election or waiver, and Kamler did not submit the form. Kamler is not a participant under ERISA and has no standing.

## III. Failure to respond to a request for information

Because Kamler was not a participant in the Pal Plan, he is not entitled to receive plan documents. But even if Kamler were a participant, he would not be entitled to fines for the lack of response. Kamler seeks fines under ERISA against Pal, Royal and Starmark for failure to furnish information in response to a request for information. 29 U.S.C. §§ 1024(b)(4),1132(c)(1),1166(a)(1).[2] Kamler alleges in his complaint that Pal, Royal, and Starmark are the plan administrators of the Pal Plan. Pal, Royal and Starmark all deny they are the plan administrator, and therefore, cannot be held liable. 29 U.S.C. § 1132(c)(1);Klosterman v. Western Gen. Mgmt., Inc., 32 F.3d 1119 (7th Cir. 1994). ERISA defines administrator as either the person specifically designated by the plan or, if an administrator is not designated, the plan sponsor. 29 U.S.C. § 1002(16)(A). Kamler admits that the Pal Plan does not specifically designate the plan

---

[2] Kamler abandoned his claim against Starmark that sought a fine for failing to provide him notice of COBRA coverage rights. Pl.Resp.Br.at13n.12. Kamler admits he was not eligible for COBRA because he did not work for Pal 90 days. Pl.Facts at ¶61n.8.

administrator. Pl. Resp. Starmark Facts at ¶ 7. Thus, the plan administrator is the plan sponsor.[3]

Plan sponsor means the employer in a plan established or maintained by a single employer, or in a plan established and maintained by two or more employers, the group of representatives who establish or maintain the plan. 29 U.S.C. § 1002(16)(B). Starmark argues that Pal established the Pal Plan for the benefit of its eligible employees, that Kamler was employed by Pal, and as the employer, Pal was expressly designated the plan sponsor in the participating employer agreement. Starmark Ex. 1A, 3; Pl. Resp. Starmark Facts at ¶¶ 6,8. Starmark concludes Kamler's former employer is deemed plan administrator. Moran v. Aetna Life Ins. Co., 872 F.2d 296, 299 (9th Cir.1989).

Kamler responds that Starmark and its co-defendants create an issue of fact by pointing to each other as the plan administrator. However, Pal does not state Starmark is the plan administrator in its motion for summary judgment; rather, Pal has not conceded it is the plan sponsor and therefore the plan administrator. Kamler argues there is a question of fact regarding whether Starmark is the plan administrator due to Starmark's exercise of alleged discretionary authority. However, the extent of a party's discretionary authority is only relevant to the question of fiduciary status under ERISA, and has no bearing on the question of whether the party is the plan administrator. The plan administrator is only the specifically designated party or the plan sponsor. 29 U.S.C. § 1002(16)(A)-(B). Indeed, the cases Kamler cites on this point examine

---

[3] Pal also argues the Pal Plan does not designate a plan administrator and thus the plan sponsor is deemed the administrator. Pal Br.at 7. Royal argues it is not mentioned in the Pal Plan and so cannot have been designated the plan administrator.

discretion to determine whether a party was a fiduciary in a breach of fiduciary duty claim.[4] No

court examined discretion as a means of identifying the plan administrator, as Kamler asks this

court to do. *See e.g.* Plumb, 124 F.3d 849; Klosterman, 32 F.3d 1119; Estate of Bratton v. National

Union Fire Ins. Co., 215 F.3d 516 (5th Cir.2000).

Moreover, Starmark argues that to the extent Kamler contends references in documents to

Starmark's administration of the group insurance that funded the Pal Plan amounts to a designation

of a plan administrator, Kamler undercuts his own claim.[5] ERISA only applies to a plan

administrator who "fails or refuses to comply with a request for information." 29 U.S.C. §§

1024(b)(4),1132(c)(1). A participant must send a written request to the plan administrator in order

to trigger its disclosure obligations. Verkuilen v. South Shore Bldg. & Mortgage Co., 122 F.3d

410,412 (7th Cir.1997). If after 30 days the administrator has not replied, the participant may file

suit to pursue a fine. *Id.;see* 29 U.S.C. § 1132(c)(1). Because requesting ERISA information is

simple and explicit, strict compliance is required. Verkuilen, 122 F.3d at 412; Jones v. UOP, 16

F.3d 141, 144-45 (7[th]Cir.1994); Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.3d 618,622

(7[th]Cir.1987). Thus, a plaintiff's claim for fines may be dismissed where, as here, the participant

does not show it requested the information from the proper party, or that the defendant was

required to provide the participant the information. *Id.* Kamler received the enrollment form by

---

[4] Vega v. National Life Ins. Serv., Inc., 145 F.3d 673 (5[th]Cir.1998), cited by Kamler to
argue the exercise of discretion determines the identity of the plan administrator was vacated.
188 F.3d 287 (5th Cir. 1999) (*en banc*).

[5] Starmark argues that the references to itself in documents establish, at most, that it
provided administrative services for the group insurance program that funded the Pal employee
welfare benefit plan and did not "specifically designate" Starmark as the Pal Plan administrator.
Starmark Facts at ¶¶ 10, 28.

May 6, 1998 and noted that the plan was administered by Starmark. Pl.Facts at ¶19. Despite this, Kamler never contacted Starmark for information. If his argument is correct and these words specifically designate Starmark as plan administrator, Kamler has no excuse for not requesting documents from Starmark. Jones, 16 F.3d at 144.

Kamler responds that Starmark was the agent of the plan administrator and should be liable for the plan administrator's failure to comply with his request. But Kamler never alleged that Pal or Royal was Starmark's agent. Compl.at ¶¶ 5,22-23. At the summary judgment stage, Kamler is held to the allegations of his complaint. *See* Soo Line R.R. Co. v. St. Louis S.W. Ry. Co., 125 F.3d 481,483 (7th Cir.1997); Joan W. v. City of Chicago, 771 F.2d 1020, 1024 (7thCir.1985). Moreover, Starmark cannot be liable because Kamler's request was made in March 2000, after the Pal Plan terminated and Starmark no longer had any responsibility for it. *See* Jackson v. E.J. Brach Corp., 937 F. Supp. 735, 741 (N.D.Ill.1996) (listing relevant factors for determining whether a fine should be imposed because of wrongdoing by the party who received the request). The purpose of levying fines is to "induce plan administrators to respond in a timely manner to a participant's request for information." *Id.* Thus, it is "improper to place a primary focus on the impact to the participant rather than the administrator's conduct." *Id.* This purpose would not be served by levying fines against Starmark.

Pal contends that although it was Kamler's employer, the entity designated in the Pal Plan as the employer in the participating employer agreement is Popowych Associates. Pal and Popowych Associates are separate companies. Thus, Pal intimates that Popowych Associates is the

-16-

plan sponsor. Pal Br. at 8.[6] Pal as Kamler's employer participated in the Pal Plan. Pal asserts it delegated the responsibility of providing copies of plan documents to Starmark, so it is Starmark's duty. Palmer v. University Med. Group, 994 F. Supp. 1221, 1240-41 (D.Or.1998). Palmer did not impose a penalty on the employer because the third party administrator had the documents. Id. at 1241. The plan provides Starmark is to retain the documents and provide copies to those who ask for them, and importantly, the certificates issued to participants direct them to contact Starmark for copies. Pal Ex. 4, part IV at 37-39,42; Pal Ex. 5 at 1,26. Kamler did not receive a certificate because he was not a participant.

Finally Pal and the Pal Plan argue that even if a request for information was made to the plan administrator, the Pal Plan is no longer in existence so there is no obligation to produce the documents. Jackson reasoned a plan administrator is not required to provide outdated documents at a plaintiff's request. 937 F. Supp. 735. Jackson stated that plan administrators are instructed to furnish a copy of the latest plan, but refused to impose a penalty for failing to provide documents with no current application.

Pal merged with Hill in October 1999. On December 31, 1999, the Pal Plan terminated. The former employees of Pal who were hired by Hill then sought coverage under Hill's benefit plan. Kamler received the enrollment form with Starmark listed as the administrator by May 6, 1998. Starmark's address was on the form. Kamler retained an attorney by August 4, 1998 when he sent his request for payment of medical bills to Pal. Yet, Kamler waited until March 6, 2000, after the Pal Plan was no longer in effect and Pal merged into Hill to request the documents. The

---

[6] Notably, Kamler does not seek to prove Pal or Starmark is the plan administrator. Rather, he sets up arguments against Pal and Starmark and concludes the issue is a fact specific inquiry. Pl. Resp. Br. at 13-17.

purposes of ERISA are not effectuated by assessing a penalty at this late date, more than a year and a half after Kamler's employment terminated, his heart attack occurred and first request for payment through an attorney.

Royal argues that the plan documents do not even mention it and thus it was not designated the plan administrator. Further, Royal was not Kamler's employer. Finally, Kamler no longer argues Royal is the plan administrator. Pl. Resp. Br. at 13-17. Thus, Royal is not the plan administrator and Kamler's claim for fines fails. <u>Klosterman</u>, 32 F.3d at 1120; <u>Moran</u>, 872 F.2d at 299-300. Kamler asserts that because he was unaware of Starmark and submitted his claim to Royal and Royal considered the claim and directed all communications to it, Royal is estopped from denying responsibility to provide requested plan information. Kamler received the enrollment form in May 1998 that stated Starmark administered the plan and Trustmark insured it. Yet he requested documents from Royal and Pal. Without evidence, Kamler argues the plan administrator delegated the responsibility to Royal to produce health plan documents. But Royal did not insure, provide, administer, or possess these documents. Kamler's failure to review his own documents, indicating Starmark as administrator, cannot form the basis for estoppel.

Kamler argues the out-dated document rule is inapplicable here because he submitted his claim in August 1998 and was frustrated at every turn in his quest to perfect his claim for damages by Pal's concealment and obstruction. Without any evidence support, Kamler's claim fails.

## IV. Promissory Estoppel

Kamler asserts that Pal is estopped from denying him coverage under the Pal Plan based on misrepresentations made by Pal employees. Pal argues that for estoppel to apply, Kamler must show Pal made a knowing written misrepresentation with reasonable reliance by Kamler on the

misrepresentation. <u>Downs v. World Color Press</u>, 214 F.3d 802, 805 (7th Cir.2000); <u>Coker v. TWA</u>, 165 F.3d 579,585 (7th Cir.1999). In the context of ERISA, estoppel is problematic given the requirements that modification of a plan occur in writing and through the procedures for amendment. <u>Shield v. Local 705, Int'l Bhd. Of Teamsters Pension Plan</u>,188 F.3d 895,903-04 (7th Cir.1999);<u>Coker</u>,165 F.3d at 585. Kamler seeks to rely on his statement during his interview for employment that he would not leave for Brazil without coverage and Lamplota's asserted reply that he would be covered; the personnel manual that provides medical insurance is carried by the firm on a group basis for the benefit of its employees, and the March 30, 1998 memorandum that stated in part, "the coverage is to start by 05-01-98." Kamler cannot rely on the statements because oral modifications of an ERISA plan are prohibited. <u>Plum</u>, 124 F.3d at 856; <u>Pohl</u>, 956 F.2d at 128. Further, although written modifications of an ERISA plan are permissible, a plan may only be amended pursuant to its express terms. <u>Brewer v. Protexall, Inc.</u>, 50 F.3d 453, 457 (7th Cir. 1995). Pal contends that Kamler's suggestion that the enrollment form should be excused is a modification to the Pal Plan, and he has not shown this modification complies with the plan's amendment procedures. Further, Kamler's assertion that the personnel manual is a written misrepresentation or modification of the Pal Plan would create absurd results. According to Kamler's interpretation, Pal was required to provide medical insurance to all its employees incident to their employment (regardless of whether they wanted it or not) and without application or payment of premiums.

Finally, the documents Kamler received, including parts of the plan, are not ambiguous. The March 30, 1998 memorandum states in relevant part:

Enclosed please find enclosed . . . the <u>Employee Enrollment Form</u> (Insurance) to be

forwarded to Brent Kamler . . . [He] should fill out the . . . Form and return it back to me as soon as possible, the coverage is to start by 05-01-1998. . . .

Pal Ex. 11 at PAL 53-76. Additionally, the cover memorandum from Olivia states: "Please fill out the requested forms and fax back . . . " Pal Ex. 9 at ¶¶ 4-5. Moreover, the enrollment form provides:

> To be completed by the employees only. Failure to provide complete facts may be cause for cancellation of your coverage as of its effective date. NOTE: As part of our routine underwriting procedures, you may receive a phone call . . . to obtain personal information needed to evaluate your insurability . . . Unless waived above, I request insurance under my employer's insurance plan . . . I authorize my employer to make deductions from my earnings for my share of the cost, if any, for the benefits for which I may become entitled . . .

Pal Ex. 11 at Pal 54-55; Pal Ex. 12. Read as a whole, these forms clearly do not promise automatic insurance coverage.

Furthermore, Kamler had a duty of due diligence to exercise available means of self-protection and failed to do so. Andre v. Salem Technical Serv., 797 F. Supp. 1416 (N.D.Ill.1992);see Pohl, 956 F.2d at 128-29. In Andre, an employee brought suit against two prior employers claiming ERISA required one of them to provide him retroactive health coverage. He was denied coverage because he was not yet officially enrolled in its health plan. The document the employee relied on in Andre made no promises of enrollment. Rejecting the plaintiff's estoppel claim, the court noted that "...ERISA bars only material representations. It does not impose an affirmative duty to explain benefit plans with the utmost clarity. Thus, an employee's lack of care in reading corporate documents does not support the proposition that the company has misled the employee." Id. at 1428. The March 30, 1998 memorandum stating coverage was to begin on May 1 is at odds with Kamler's belief that he was covered as soon as he accepted

employment. Kamler was aware of the need for insurance. Yet he did not apply for the Pal Plan or make sure a premium was paid on his behalf. Nor did the written employment agreement provide that Pal would cover Kamler free of charge and without any election for coverage.

A plaintiff may not rely on an oral representation when it is contrary to the written terms of the plan and those terms are set forth clearly. If the written documents are ambiguous, estoppel can be established by proof that a participant was misled by oral statements and conduct of the plan's agent. <u>Bowerman</u>, 226 F.3d at 588; <u>Black v. TIC Inv. Corp.</u>, 900 F.2d 112,115 (7th Cir.1990). Although Kamler is not a participant, he argues his situation falls squarely in <u>Bowerman</u>'s holding. Kamler contends that nothing in the documents he received disclosed he would not be covered unless the enrollment form was completed and submitted to Starmark. He argues that the personnel manual confirmed his coverage by stating that medical insurance is carried by the firm on a group basis for the benefit of its employees and Lamplota's memorandum that Kamler's health insurance coverage was to start on May 1, 1998. Kamler argues Pal is estopped by these written representations that he was covered even if different from the enrollment provisions of the insurance contract itself. However, the documents in question are not ambiguous. The memoranda he received and the enrollment form instructed him to fill out the form and submit it to Pal. The personnel manual that states medical insurance is carried by the firm on a group basis for the benefit of the employees and statement that Kamler's coverage was to start by May 1 do not create an ambiguity. There is nothing in the personnel manual that indicates coverage was automatic. Further, the March 30, 1998 cover memorandum does not promise coverage without filling out the form. Finally, the Pal Plan's terms are clear that Kamler had to enroll for coverage.

Kamler also argues he reasonably relied on representations in the personnel manual and

Lamplota's memorandum that he was covered, and Lamplota's alleged promise that Kamler would have health coverage prior to his departure from the United States. Without any analysis, Kamler string cites to numerous cases and argues his situation is analogous. Each of these cases, however, involved a participant in the plan at issue. Thus, they are irrelevant. Further, because the plan documents are unambiguous, Kamler's reliance is unreasonable. Finally, Kamler responds that requiring him to exercise self-protection has been rejected as a defense, citing <u>Schleibaum v. K Mart Corp.</u>, 153 F.3d 496,502 (7th Cir.1998). <u>Schleibaum</u> is inapposite. It dealt with mitigation of damages and not the issue of liability. Without any support in the record, Kamler concludes that Pal prevented the occurrence of a condition precedent to coverage, enrollment in the Pal Plan, and so Pal may not stand on that condition's nonoccurrence to escape the consequences of promissory estoppel. <u>Bowerman</u>, 226 F.3d at 587. Nothing Pal did prevented Kamler from completing the enrollment form.

## V. Breach of Fiduciary Duty

ERISA defines the term "fiduciary" as a person who exercises any discretionary authority or control respecting the management of a plan or who has any discretionary authority or responsibility in the administration of a plan. 29 U.S.C. § 1002(21)(A). The court first determines whether a person is a fiduciary with respect to the particular activity at issue. <u>Leigh v. Engle</u>, 727 F.2d 113, 133 (7th Cir.1984). Pal had no discretion with respect to Kamler's obligation to fill out the enrollment form. In fact, the form indicates only Kamler as the employee could fill it out. Pal Ex. 11 at PAL 54. In <u>Andre</u>, the court reasoned an employer's duty of due diligence under ERISA is greatest when:

[T]he employer assumes the responsibility for things that only the employer can do.

. . But an . . . employee's attempt to enroll in a welfare benefit plan presents a different situation, one where typically the agent has no discretion and the principle has a normal capacity for self protection. [citation omitted]. Here [the employer] had no discretion—only the ministerial responsibility of doing paperwork necessary to get [the employee] enrolled with [the insurer]. And as for [the employee], he had numerous means of self-protection available to him . . . [I]f he had attempted to confirm his enrollment . . . the [employer] could and would have corrected the initial problem and gotten him enrolled. He did no[thing] until after his heart attack, although a number of red flags had gone up before that time: no insurance deductions were taken from his paycheck, the promised "insurance package" never arrived and he never received an insurance card of the type that large insurers typically issue.

*Id.* at 1425. Kamler had numerous means of self-protection but did nothing. He did not fill out and return the enrollment form; he did not verify deductions were taken from his check; he did not receive a certificate of insurance or insurance card nor inquire why.

Kamler responds that if the plan documents do not specify the plan administrator, then Pal as the plan sponsor is the plan administrator. Kamler argues that by definition the plan administrator is a fiduciary. 29 U.S.C. § 1002(21);Dep't of Labor Reg. § 2509.75-8,Ques.D-3 & FR-12,40 (Oct. 9,1975). Kamler contends that Lamplota acted as Pal's agent for Kamler's enrollment in the Pal Plan and Lamplota communicated interpretations of the Pal Plan to Kamler. Pal Answer at ¶ 13. Without any authority, Kamler argues that even though Lamplota's information and interpretations were incorrect, they constitute the exercise of discretionary authority about the terms of the Pal Plan, including eligibility and enrollment. None of Lamplota's statements, however, excused Kamler from submitting an enrollment form.

Under ERISA, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . [with] care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). Kamler argues that a fiduciary that denies its fiduciary status is not acting

in the participants' best interests. An ERISA fiduciary also has the duty to adhere to the terms of the plan. Cutting v. Jerome Foods, Inc., 820 F. Supp. 1146,1153 (W.D.Wis.1991). Kamler asserts Pal breached its duty by telling him Pal would not pay the first 90 days of premiums contrary to the terms of the Pal Plan. Kamler denies Lamplota told him this and so cannot rely on it as a breach of fiduciary duty. Kamler argues fiduciaries have a duty to communicate material facts to employees. Fiduciaries breach this duty "if they mislead plan participants or misrepresent the terms or administration of a plan." Bowerman, 226 F.3d at 590. Fiduciaries must communicate material facts affecting the interests of plan participants and this duty to communicate exists when a participant "'asks fiduciaries for information, and even when he . . . does not.'" Id. (citing Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 991 (7th Cir.1993)). Kamler contends his testimony establishes Pal breached its fiduciary duties in several ways. First, Lamplota assured Kamler that he would be covered by Pal's insurance from the beginning of his employment when in fact it imposed a 30-day waiting period. But this period could be waived by request submitted with the enrollment form, and the waiting period would not have affected Kamler's claim. Next, Pal neglected to provide Kamler with an enrollment form at the beginning of his employment. Pal then informed Kamler coverage was to start by May 1, 1998 without informing him the form was necessary. Finally, Pal did not respond to Kamler's request for information about the enrollment form. These assertions are immaterial. Andre, F. Supp. at 1424-27. The documents Kamler received clearly indicated he had to fill out the enrollment form and return it for coverage. Nothing Lamplota allegedly did or did not do suggested otherwise.

## **CONCLUSION**

The motions for summary judgment are granted.

ENTER:

Suzanne B. Conlon
United States District Judge

June 25, 2001